# Parrish et al. v. Redmon et al.

Feb. 21, 1941.

William T. Baldwin and Bradley & Blanton for appellants.

Raymond Connell, George Batterton and John P. Crosby for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing in part and affirming in part.

W. W. Hall died intestate, a resident of Bourbon County, in July, 1939, owning approximately 882 acres of land and in addition thereto approximately $100,000 in personal property. His estate was inherited by the

descendants of his paternal and maternal uncles and aunts so that there was a vast number of widely scattered heirs. Shortly after his death his administratrix filed suit for a judicial determination of his heirs at law and for the advice of court in the settlement of the estate. That action was separate from the present action and has no connection with it. The present action was filed by Elizabeth Hall Redmon, one of the heirs at law, seeking a sale of the real estate on the ground of indivisibility under Subsection 2 of Section 490 of the Civil Code of Practice. All known heirs at law were made parties defendant; also made defendants were the unknown heirs of W. W. Hall and, pursuant to Civil Code of Practice, Section 691, a warning order was entered and warning order attorney appointed for them. It was alleged in the petition that Polly Hall Hamilton, a maternal aunt of the decedent, left surviving as her only heir at law a son, Tom Hamilton, and that it was unknown whether he was living or dead and whether or not he left issue surviving him. Consequently the unknown heirs of Tom Hamilton, as well as the unknown heirs of the decedent, were made parties and proceeded against by constructive service.

In September, 1939, an amended petition was filed, alleging that since the filing of the petition many other heirs at law, who, were unknown when the petition was filed, had been ascertained and these heirs at law were made parties. All known heirs at law either entered their appearance or were duly brought before court in some manner. Included in the heirs at law were two sets of nonresident infants, three in one set and two in another, who were properly before court by constructive service. Not only was this true but the appearance of two of them was entered by their statutory guardian. One of the infant defendants later filed answer alleging that he was over 21 years of age. As a matter of fact no question is raised as to any of the known defendants, either infant or adult, being before court.

Depositions were taken on interrogatories proving the indivisibility of the real estate and at the November term, 1939, judgment was entered directing a sale of the land. The judgment did not fix the interests or shares of the heirs at law but reserved that question and provided that the interests of all heirs at law of the decedent should attach to the proceeds of sale. The land

was duly advertised and sold and report of sale was filed on February 10, 1940. Each of the purchasers filed practically identical exceptions to the report of sale. The substance of these exceptions was 1) that the real estate was in lien for the payment of debts for a period of one year from the death of the decedent, which period had not expired; 2) that the judgment did not fix the shares of the respective heirs at law especially the shares of the infants, so that the purchasers might when paying the purchase money withhold that portion of the proceeds belonging to the infants, which under the law is required to remain a lien upon the land until the infants reach the age of 21 years or until a guardian is duly qualified to receive the money; 3) that the proof was improperly taken upon interrogatories instead of by depositions and 4) that no affidavit of descent was filed in the clerk's office as required by law and that title papers were not filed.

After the exceptions were filed but before a ruling thereon an order was entered directing the Commissioner to take proof and report as to the heirs at law and their shares in the proceeds. This was done and in taking the proof it was ascertained that there was no such person as Tom Hamilton, above referred to, but that Polly Hamilton was survived by a son, John Hamilton. It was also discovered that a paternal uncle of the decedent had died leaving a son, William Hanson Hall, who was not named in the petition.

The purchasers thereupon filed amended exceptions based on the fact that the heirs at law of John Hamilton and William Hanson Hall were not properly before court. The trial court sustained the exceptions being moved to do so, apparently, by supposition that the descendants of William Hanson Hall, who were heirs at law of the decedent, were not before court. The exceptions were sustained and the sale was set aside and the land was ordered rented. This judgment was entered on March 21, 1940, some days before the conclusion of that term of court, and was signed on the day following its entry. The orders of the last day of the term were left unsigned. At the next term of court, in May, 1940, an intervening petition was filed by the descendants of William Hanson Hall, who had been ascertained since the last term of court, entering their appearance and ratifying the sale. Thereupon the court on June

26, 1940, still within one year from the decedent's death, deeming that it had jurisdiction to set aside the judgment sustaining the exceptions to the report of sale entered at the preceding term by reason of the fact that the last day's orders at that term had not been signed, set aside the judgment sustaining the exceptions and entered judgment confirming the report of sale. From the latter judgment the purchasers prosecute this appeal and the heirs at law are prosecuting a cross-appeal from the judgment entered on March 21, 1940, sustaining the exceptions and setting aside the sale.

At the outset we may say that it appears from the briefs that the purchasers are willing to stand by their purchase and that all the heirs at law desire that the sale should be upheld, the real purpose of this appeal by the purchasers being to assure themselves of a good title. In these circumstances we are naturally desirous to uphold the sale but we find that at least one question is called to our attention which prevents us from doing so. That question is the one raised by the exceptions to the effect that the land sold was in lien for the payment of the decedent's debts at the time the sale was made and at the time the exceptions were sustained on March 21, 1940. If any ground of exception assigned by the purchasers was sufficient to require the court to sustain the exceptions and set aside the sale, then, of course, the judgment confirming the sale was erroneous. It is true that this question is not argued in appellants' briefs; nevertheless it is called to our attention in the brief by the statement that it was the main exception and were we to uphold the validity of the sale this opinion would be at least implied authority that this ground of exception was not well taken. We therefore feel called upon to pass upon the question.

At the time of the sale and at the time the exceptions were sustained and the sale set aside, the decedent had been dead less than a year. Section 2087 of the Kentucky Statutes gives a lien to creditors on real estate of a decedent in the hands of a bona fide purchaser where the purchase is made within a year from the decedent's death. Construing this statute, we held in Allen v. Reidling, 283 Ky. 90, 140 S. W. (2d) 833, that one entering into a contract of sale of land with heirs at law of a decedent who had been dead less than a year could repudiate the contract since the heirs at law could

not convey a clear title. In Hambrick et al. v. Smith et al., 231 Ky. 423, 21 S. W. (2d) 658, it was held that a sale of land pursuant to Subsection 2 of Section 490 of the Civil Code of Practice (as was the case here) will not deprive creditors of their rights under Section 2087 and that such a sale is the same in all respects as far as this statute is concerned, as if it had been made by the heirs or devisees. A consideration of these two cases makes it apparent that the sale cannot be upheld since the purchasers excepted to it on this ground. This being true, the judgment sustaining the exceptions and setting aside the sale was correct and the subsequent judgment, setting aside the previous one and confirming the sale, was erroneous. This necessitates a reversal on the original appeal and an affirmance on the cross-appeal and results in the necessity of another sale.

This conclusion we have reached makes it unnecessary to determine whether or not the court had authority at a subsequent term to set aside the judgment of March 21, 1940, sustaining the exceptions since the judgment of June 26, 1940, confirming the report of sale was erroneous in any event.

It becomes unnecessary also to decide as to the sufficiency of the exception interposed by the purchasers upon the ground that the judgment did not fix the interests of the infant defendants so as to enable the purchasers to withhold payment of the purchase money to the extent of the infants' shares since that question is now moot—by a supplemental judgment entered on June 26, 1940, the shares of all parties in the purchase money were fixed so that this question will not arise in connection with the next sale. Nor is it necessary to determine whether or not the constructive service of process on the unknown heirs of the decedent was sufficient to bring before the court any unknown heirs of John Hamilton and of William Hanson Hall, who were, of course, also unknown heirs of the decedent. Subsequent proceedings have judicially established that John Hamilton died without leaving descendants surviving him and the descendants of William Hanson Hall have entered their appearance.

The only grounds of exception to the report of sale, other than the ones mentioned, which might have a bearing on a subsequent sale are the third and fourth men-

618

tioned above. The third ground, that the depositions as to indivisibility were taken on interrogatories, rather than on depositions, was not sufficient to justify setting aside the sale. None of the parties made any complaint or raised any objection as to this. The purchasers were not affected by it. Though it be conceded, arguendo, that this procedure was erroneous, such error did not render the judgment void but only erroneous. A reversal of the judgment of sale would not affect the title of the purchasers, City of Owensboro v. Hardwick et al., 232 Ky. 751, 24 S. W. (2d) 555, and this being true, they cannot complain.

The fourth ground of exception based on the fact that an affidavit of descent was not filed and that title papers were not filed was clearly not sufficient to require the sale to be set aside. Section 495a-1, Kentucky Statutes, merely requires the filing of the affidavit mentioned therein before recording of a deed—the affidavit, if necessary, may be filed at any time prior to recording the purchasers' deed. Nor was it necessary to file title papers in an action such as this to sell land pursuant to Civil Code of Practice, Section 490, Subsection 2. Powell v. Baer, 143 Ky. 282, 136 S. W. 629.

The judgment is reversed on the original appeal and affirmed on the cross-appeal with directions to enter a judgment sustaining the exceptions and setting aside the sale.